## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____
                                                    )
**LEERS WEINZAPFEL ASSOCIATES ARCHITECTS, INC.,**   )
    **Plaintiff**                )
    **v.**                        )
                                                    )     **C.A. No.**
**KIRSTJEN M. NIELSEN, Secretary, U.S. Department of** )
**Homeland Security; U.S.  DEPARTMENT OF HOMELAND**  )
**SECURITY; U.S.  CITIZENSHIP AND IMMIGRATION**      )
**SERVICES, and LAURA B. ZUCHOWSKI, Director,**      )
**USCIS Vermont Service Center.**                    )
    **Defendants.**                )
_____)

## PLANTIFFS' ORIGINAL COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF AND REVIEW OF AGENCY ACTION UNDER THE ADMINISTRATIVE PROCEDURE ACT

This action is brought by the Plaintiff, **Leers Weinzapfel Associates Architects, Inc.,** against the Defendants to seek review of a September 4, 2018 decision of the U.S. Citizenship and Immigration Services improperly denying the Plaintiff's Form I-129 visa petition to classify its intended beneficiary as an H-1B nonimmigrant worker under Section 1101(a)(15)(H)(i)(B) of the Immigration and Nationality Act. The Plaintiff seeks a declaratory judgment declaring the decision of the Defendants dated September 4, 2018 to deny the Plaintiff's H-1B visa petition for Youngsoo Yang unlawful, reversing the September 4, 2018 decision to deny the Plaintiff's petition to change Youngsoo Yang's status to the H-1B visa category, ordering the Defendants to approve Youngsoo Yang's H-1B status with an effective date of October 1, 2018 through September 12, 2021, ordering the Defendants to issue a decision approving the Plaintiff's H-1B petition on behalf of Youngsoo Yang, and striking the Defendants September 4, 2018 decision as

unlawful and in violation of the Immigration and Nationality Act and associated regulations and

the Administrative Procedure Act. The Plaintiff also seeks injunctive relief against the

Defendants to prevent them from taking further action on Youngsoo Yang's case other than

issuing the corrected decision requested herein. The Plaintiff seeks action on this petition on an

emergency basis due to circumstances set forth in this complaint.

## PARTIES

1.      The Plaintiff, **Leers Weinzapfel  Associates Architects, Inc. (hereinafter "Leers

Weinzapfel")**, is a domestic corporation duly organized under the laws of the Commonwealth of

Massachusetts with a principal place of business at 75 Kneeland Street, Boston, Massachusetts.

Leers Weinzapfel legally employed Youngsoo Yang in the position of Architectural Designer

since September 8, 2017 after he obtained employment authorization from the Defendant, U.S.

Citizenship and Immigration Services.

2.      The Defendant, **Kirstjen M. Nielsen**, is being sued in her official capacity as the

Secretary of the Department of Homeland Security.  In this capacity, she is charged with the

administration and enforcement of the immigration laws, pursuant to 8 U.S.C., §1103, and she

possesses extensive discretionary powers to grant certain relief to non-U.S. Citizens. More

specifically, the Secretary of the Department of Homeland Security is responsible for enforcing

the Immigration and Nationality Act (INA) and for approving applications for nonimmigrant visa

petitions and providing foreign nationals with evidence of their legal status in the United States.

The U.S. Citizenship and Immigration Services is an agency within the Department of Homeland

Security to whom the Secretary's authority has in part been delegated, and is subject to the

Secretary's supervision.

3.      The Defendants, **Department of Homeland Security (hereinafter "DHS") and the**

**U.S. Citizenship and Immigration Services (hereinafter "USCIS")** are the agencies

responsible for enforcing the INA and for adjudicating and approving applications for

nonimmigrant visa petitions and providing foreign nationals with evidence of their legal status in

the United States.

4.      The Defendant, **U.S. Citizenship and Immigration Servic**es, includes the **Vermont**

**Service Center.** The Defendant, **Laura B. Zuchowski**, is sued in her official capacity as the

Director of the Vermont Service Center which is the place where the Plaintiff's immigration file

may currently be located and which made the decision at issue in this case. The Vermont Service

Center is located at 75 Lower Welden Street, St. Albans, VT 05479.

## JURISDICTION

5.      Jurisdiction in this case is proper under the Immigration and Nationality Act (INA), 8

U.S.C. § 1101 *et seq.*; 28 U.S.C. §§ 1331 and 1361; the Administrative Procedures Act (APA), 5

U.S.C. § 701 *et seq.*; and 28 U.S.C. § 2201 *et seq.*  Relief is requested pursuant to said statutes.

There is an actual and justiciable controversy between the parties and the Plaintiff seeks

declaratory and injunctive relief in order to protect its rights.

## VENUE

6.      Venue is proper in this court pursuant to 28 U.S.C. § 1391(e), in that this is an action

against officers and agencies of the United States in their official capacities, brought in the

District where the  Defendant resides and where a substantial part of the events or omissions

giving rise to the Plaintiff's claims occurred.  More specifically, the Plaintiff is a Massachusetts

corporation with its principal place of business in Massachusetts, and the beneficiary of the

Plaintiff's visa petition was employed in Massachusetts at all times when the events at issue in

this case occurred. The Plaintiff's visa petition that is in dispute was decided by the USCIS

Vermont Service Center which has jurisdiction over visa petitions filed by Massachusetts

employers.

## EXHAUSTION OF REMEDIES

7.      The September 4, 2018 decision by the Defendant USCIS to deny the Plaintiff's H-1B

visa petition for its intended beneficiary, Youngsoo Yang, constitutes a final agency action under

the APA, 5 U.S.C. § 701 *et seq*. Neither the INA nor DHS regulations at 8 C.F.R. § 103.3(a)

require an administrative appeal of the denial. Accordingly, the Plaintiff has no administrative

remedies to exhaust. Moreover, exhaustion of any available administrative remedies will be

meaningless and ineffective given the issues in this case and this lawsuit is the Plaintiff's only

hope to rectify the situation. The Plaintiff has no other viable remedy or legal avenue to pursue in

connection with this issue other than this legal action.

## FACTUAL AND LEGAL ALLEGATIONS

8.      The Plaintiff, Leers Weinzapfel, is an architectural firm founded in 1982. The Plaintiff

provides architectural services on a wide range of projects throughout the United States and

currently employs 25 individuals, all of whom are essential to the overall success of the business.

Out of its 25 employees the Plaintiff employs fifteen (15) licensed architects. In order to develop

architects for the future of its business and to allow young professionals who have no license and

minimal experience to learn their trade and work towards obtaining their architect license, the

Plaintiff  typically hires recent college graduates with  Bachelor's or  Master's degrees in

architecture  in  the position of Architectural Designer. The Plaintiff currently employs nine (9)

Architectural Designers who work under the supervision of its licensed architects and who are

considered 'on the path to licensure' in their field.

9.      The position of Architectural Designer with Leers Weinzapfel is one that requires, at a minimum, a bachelor's degree in architecture, but not an architect license. In this position, the Architectural Designer must work with one or more project teams consisting of at least one licensed Architect who provides daily guidance and supervision on the project. Working as part of a team, Leers Weinzapfel's Architectural Designers participate and contribute to all phases of the projects, including planning, designing, renderings and preparation of architectural documents for construction of various structures. Specifically, an Architectural Designer employed by the Plaintiff must: prepare detailed designs of architectural and structural features of buildings, interior and exterior spaces for architectural projects; along with the project team, this position will participate in meetings and communicate with clients about various aspects of the proposed projects, including objectives, requirements and budget; brainstorm creative design plans; develop models utilizing computer software; interact with other designers and architects; present design proposals; accompany licensed architects to worksites to ensure that construction projects adhere to architectural plans; and follow up with design work as a project progresses.

10.     As attested to in the Plaintiff's initial submission and in the expert opinions provided to USCIS in support of its petition, an Architectural Designer performs many of the same duties as a licensed Architect, but works under the guidance and close supervision of a licensed Architect who assumes responsibility for the work. Both positions require sound theoretical foundation in this highly specialized field that is associated with the attainment of at least a Bachelor's degree. However, in order to become a fully licensed Architect an Architectural Designer must first train under the watch of a licensed Architect and must satisfactorily complete the licensing examination established by the appropriate licensing authority for each state. Until such time as an Architectural Designer obtains his/her license  he or she cannot perform the full range of

duties required of the licensed Architect, such as signing of on plans, regardless of the amount of knowledge and experience such individual may possess. It is the lack of the professional license and overall experience in the field that differentiates the position of Architectural Designer at Leers Weinzapfel from its licensed Architects which is representative of the industry's practice.

11.     The intended beneficiary of the Plaintiff's H-1B petition, Youngsoo Yang, is a 27 year old native and citizen of The Republic of Korea. In order to attend school in the United States Mr. Yang obtained an F-1 Student Visa and entered the country legally with his F-1 visa. In May, 2017 Mr. Yang obtained his Master of Architecture Degree from Drury University, Hammons School of Architecture, in Springfield, Missouri. After his graduation Mr. Yang became eligible to apply for an employment authorization document (EAD) which would permit him to work in the United States based upon what is called Optional Practical Training (OPT) for a one year period beyond the date of his graduation. Subsequent to obtaining his Master's Degree Mr. Yang applied for and obtained his OPT EAD card with a validity period of July 1, 2017 through June 30, 2018.

12.     On September 8, 2017 the Plaintiff began employing Youngsoo Yang in the position of Architectural Designer. From the date of his initial employment Mr. Yang worked for the Plaintiff as an Architectural Designer in valid immigration status with his EAD card. Based on Mr. Yang's performance and capabilities, the Plaintiff decided to sponsor him for a change of status from F-1 student visa to the H-1B visa category. The change of status would permit Mr. Yang to remain in the United States and would allow the Plaintiff to continue employing Mr. Yang beyond the June 30, 2018 expiration date noted on his one-year OPT EAD card and the automatic cap-gap extension described below, which was in effect during the time the Plaintiff's

H-1B petition was pending. The Plaintiff invested a substantial amount of time and money in legal fees and costs, including filing fees in this endeavor.

13.     Prior to the agency action that precipitated this litigation, Youngsoo Yang was working on the Plaintiff's project at the East Boston Police station which is in the construction documents phase.  Mr. Yang had worked on this project from the outset and his services were critical to the success of the project. At the same time Mr. Yang was also working on a project where the Plaintiff was retained to provide a new facade study at the Brigham and Women's Hospital in Boston, covering over the old concrete wall and making it a more light and dynamic metal facade. In his position as Architectural Designer on these projects, Mr. Yang had provided rendering programs that the Plaintiff relied on for its design phases in each project. Mr. Yang was an essential member of both project teams and his continued involvement with each project was essential to the overall success of the Plaintiff's work. However, since the denial of the Plaintiff's H-1B visa petition, Mr. Yang is no longer permitted to work in the United States and has now departed this country in order to preserve his immigration status for the future and to ensure there would be no legal impediment to his return to the United States if the Plaintiff prevails in this lawsuit. Similarly, due to the erroneous denial of the H-1B petition, the Plaintiff is now  deprived of Mr. Yang's services and has been forced to seek temporary replacements and reallocate assignments within the project teams where his work was critical. As a result of the Defendants' actions, the Plaintiff has suffered considerable financial loss and disruptions to its projects.

**The H-1B Visa Category and the Petitioning Process**

14.     The H-1B program allows U.S. employers to legally hire foreign nationals to temporarily work in a "*specialty occupation*" for a maximum period of six (6) years, plus additional

extensions as permitted by law. See INA § 101(a)(15)(H)(i)(b); 8 U.S.C. § 1184(g)(4); and §

104(c), American Competitiveness in the Twenty-First Century Act (AC21), Title 1, § 104(c),

Pub. L. 106-313 (Oct. 17, 2000).  A "*specialty occupation*" is one that requires, "(A) theoretical

and practical application of a body of highly specialized knowledge, and (B) attainment of a

bachelor's or higher degree in the specific specialty (or its equivalent) as a minimum for entry

into the occupation in the United States." 8 U.S.C. § 1184(i).

15.        Congress set the current annual cap for the H-1B category at 65,000.  Not all H-1B

nonimmigrant petitions are subject to this annual cap.  Each year 6,800 H-1Bs are set aside from

the 65,000 each fiscal year for the H-1B1 program under the terms of legislation implementing

the U.S.-Chile and U.S.-Singapore free trade agreements. Unused visas in this group become

available for H-1B use for the next fiscal year. In addition, 20,000 H-1Bs are accepted under the

U.S. advanced degree exemption, known as the master's cap. This annual cap is imposed each

fiscal year, which commences on October 1st.  In order for the petitioner to file and have their H-

1B petition accepted by the Defendant USCIS for a particular fiscal year, an employer must file

the H-1B petition during the first five business days in April ("cap filing period"), which is 6

months in advance of the preceding fiscal year. Once the USCIS determines it has received more

than enough petitions to fill the annual visa quota, it stops accepting cap-subject petitions until

the next fiscal year's cap filing period. As a result of the annual cap limitation, if more petitions

are received by the USCIS during the filing period than permitted by the annual cap, the USCIS

imposes the regulatory random lottery system of determining what petitions will ultimately be

accepted.  All of the FY 2019 H-1B petitions were submitted to the lottery.

16.        Pursuant to regulation, F-1 students whose OPT was valid at the time of filing the H-1B

petition, but for whom the OPT will expire before October 1st, will remain in valid status and can

continue to work for up to six additional months, or through September 30th of the same year if

the petition is approved, or remains unadjudicated, or until USCIS denies the petition if such

decision follows the expiration date of the OPT EAD period. 8 CFR § 214.2(f)(13). This

provision known as the "cap-gap" is essential for employers like the Plaintiff who seek to

employ foreign students on a long-term basis because it allows the student to continue working

on critical projects for the employer while awaiting final adjudication of the H-1B visa petition.

17.     The H-1B process involves two major steps. First, the petitioning employer must submit

a Labor Condition Application (LCA) to the Department of Labor (DOL) for certification.

Second, in order for a foreign national to obtain H-1B status, a U.S. employer, the Petitioner,

must file a nonimmigrant H-1B petition on behalf of the sponsored employee with the

Defendant, USCIS. Each petition must be accompanied by a certified LCA that corresponds with

the sponsored position. If the foreign national, the beneficiary of the petition, is in the United

States in another valid nonimmigrant status, such as an F-1 student, at the time the petition is

filed with the USCIS, the petitioning employer may request a change of nonimmigrant status to

reflect the H-1B category.

18.     The LCA certification requirement was implemented with the objective of protecting H-

1B workers from wage abuses and U.S. workers from unfair competition. DOL uses the LCA to

certify a prevailing wage for the job category and geographic location listed by the employer, in

accordance with its statutory authority and pursuant to the implementing regulations at 20 CFR

655.731 and its internal guidelines, including the *U.S. Department of Labor Employment and*

*Training Administration's, Prevailing Wage Determination Policy Guidance, Nonagricultural*

*Immigration Programs (revised November 2009)* ("Wage Guidance") and available at

http://www.flcdatacenter.com/download/NPWHC_Guidance_Revised_11_2009.pdf,

published on AILA InfoNet at Doc. No. 10010468. Upon submission of the LCA, employers attest that the prevailing wage information for the specific occupational classification entered on the application complies with the DOL's regulations at 20 CFR § 655.731. Specifically, with each submitted LCA employers attest to the following: (1) employer will pay the H-1B holder a wage that is equal to the wage paid to similarly qualified workers or, if greater, the standard wage paid for the position in the corresponding geographical location; (2) employer will adhere to working conditions that will not negatively impact existing, similarly employed workers; (3) there must be no strike or lockout at the time of the application; and (4) a notice of the application with the DOL must be provided to the union representative (if applicable) or posted at the business location.

19.     To be in compliance with the H-1B program's requirements and the LCA attestations, employers preparing LCAs must either request a wage determination from the DOL or must follow a multi-step process developed by the DOL to select the appropriate prevailing wage source and wage rate, and must list both on the LCA form.  As part of this process, typically employers consult the Occupational Information Network (O'NET), which can be found at https://www.onetonline.org/, to determine which occupational category and corresponding Standard Occupational Classification (SOC) code most closely conforms to the sponsored H-1B positon. O'NET is a data base developed under the sponsorship of the DOL which contains hundreds of standardized occupations, but not job-specific descriptors on almost 1,000 occupations covering the entire U.S. economy, including the typical or "normal" job duties and qualifications for entry into specific occupational categories. Using the selected SOC code from the O'NET employers will then locate the corresponding prevailing wage rate for the geographic area of intended employment using on the Bureau of Labor Statistics' (BLS) Occupational

Employment Statistics (OES)  wage data, which is available in the Foreign Labor Certification

Data Center Online Wage Library (OWL), found online at http://www.flcdatacenter.com/.  As an

alternative to the OES data, the DOL's regulations authorize the use of independent wage

surveys to obtain prevailing wage information for positions in various industries.

20.     Employers often resort to private surveys for LCA preparation where the OES/O'NET's

data for the closest matching occupational category is not sufficiently tailored or is unavailable

for the particular position for which the H-1B classification is sought. Private surveys often

provide more accurate data than the OES survey in terms of closer alignment of the occupational

categories, job duties and salary information for employees in various occupations. To be

accepted, private surveys must meet seven specific criteria, which are described in DOL's

General Administration Letter 2-98 (GAL 2-98) available at

https://wdr.doleta.gov/directives/corr_doc.cfm?DOCN=942. If an employer uses a wage survey,

other than that offered on line by the DOL at http://www.flcdatacenter.com/, the survey entry in

the LCA must contain the name of the survey company *and* the exact title of the survey used.

21.     Prior to certifying an LCA that uses private wage survey data, to determine the required

wage rate, the DOL must first review and accept the employer provided survey as compliant with

the specific regulatory criteria in 20 C.F.R. § 655.731(b)(3)(iii)(B) and (C). Unless the employer

submits an acceptable private survey, the DOL's prevailing wage specialists will use OES data to

render prevailing wage determinations for visa sponsorship in the temporary (H-1B, H-3, E-3)

and permanent labor certification (PERM) programs where such determination is required or

requested. For each certified LCA, employers are required to maintain a public access file

documenting compliance with the LCA attestations and program requirements, including

evidence that the occupational category and, where applicable, wage level provided on the LCA,

properly correspond to the sponsored position. The LCA is the basis for the DOL's enforcement, through its Wage and Hour Division (WHD), of the employer's H-1B obligations. The DOL is solely responsible for the LCA certification process and has the sole authority to investigate and enforce LCA compliance pertaining to the employment of H-1B nonimmigrants. 20 CFR § 655.705(a).  DOL regulations relating to the H-1B program are set forth in 20 CFR §655 Subparts H and I.  Neither Congress nor the DOL have delegated the authority for the administration of this program or LCA compliance oversight and enforcement to the Defendants.

22.       H-1B petitions filed with a certified LCA are adjudicated by the Defendant, USCIS. To secure an approval of its H-1B petition, the U.S. employer must submit a petition and prove by the preponderance of evidence that the job offered to the foreign national is one that meets the regulatory definition of *specialty occupation*, that the compensation offered for the position meets the  (higher of prevailing or actual wage) proffered wage that was certified on the underlying LCA in accordance with the standards set by the DOL for similar occupations in the same geographical locations, the U.S. employer has the ability to pay the beneficiary the offered wage, and that the beneficiary meets the minimum requirements for the professional positon. To qualify as a *specialty occupation*, the position must meet one of the following criteria: (1) a baccalaureate or higher degree or its equivalent is normally the minimum requirement for entry into the particular position; (2) the degree requirement is common to the industry in parallel positions among similar organizations, or, in the alternative, an employer may show that its particular position is so complex or unique that it can be performed only by an individual with a degree; (3) the employer normally requires a degree or its equivalent for the position; or (4) the nature of the specific duties is so specialized and complex that knowledge required to perform

the duties is usually associated with the attainment of a baccalaureate or higher degree. 8 C.F.R.

§ 214.2(h)(4)(iii)(A)(1)-(4).

23.     To adjudicate an H-1B petition, USCIS must ultimately determine whether the

petitioning employer's job qualifies as a *specialty occupation* and whether the foreign national

on whose behalf the petition was filed, referred to as the Beneficiary, is qualified to perform the

job duties required by the specialty occupation. *See* 8 C.F.R.§§ 214.2(h)(4)(i)(A)(1),

(h)(4)(iii)(B)(3). Upon acceptance of a petition for H-1B visa status, USCIS adjudicators must

also determine whether the petition is supported by an LCA which corresponds with the petition

and whether the job offer named in the H-1B petition is a specialty occupation in accordance

with 8 CFR §214.2(h)(4)(i)(B).  While USCIS is directed to review the LCA when making this

determination in the context of adjudicating H-1B petitions the scope of review is very

limited and must focus solely on a determination as to whether the sponsored position is a

"specialty occupation."

24.     The DOL administers the LCA program and, as such, determines prevailing

wages.  It is outside the scope of USCIS' adjudicatory function to make wage

determinations or audit employers for compliance with the DOL's prevailing wage

guidelines or the LCA attestations. The Defendant, USCIS lacks the authority and the

expertise necessary for determining whether the prevailing wage source, the occupational

category and wage rate provided on the LCA and certified by the DOL are appropriate for the

sponsored positon, and whether the process used to arrive at the required wage rate satisfies the

Congressional objectives with regard to the LCA program. These determinations are made by the

DOL at the time it certifies the LCA and the employer is accountable to the DOL for compliance.

**The Plaintiff's H-1B Visa Petition for Youngsoo Yang**

25.    On April 1, 2018, the Plaintiff filed a visa petition for Youngsoo Yang in order to change his status from F-1 student with OPT to the H-1B visa category. Prior to filing the visa petition, the Plaintiff obtained a certified LCA from the DOL using the job tile, "Architectural Designer" and the corresponding SOC (O'NET/OES) Code of 17-1011, representing jobs that fall within the occupational category of "Architects, Except Landscape and Naval."  Other types of related positions, such as Architectural and Civil *Drafters*, Architectural and Engineering Manager, are also included within the O'NET as distinct occupational categories and are assigned their unique SOC codes.  However, the O'NET database does not contain a separate category for "Architectural Designers." The wage source used by the Plaintiff to determine the prevailing wage was "Dietrich Surveys, Dietrich Architectural Salary Survey" from 2018, includes compensation data specific to Architectural Designers. The DOL accepted both the Dietrich wage survey and the prevailing wage set forth by the Plaintiff in the LCA and certified the form. A copy of the certified LCA with required redactions is attached hereto as Exhibit A.

26.    In addition to the certified LCA, the Plaintiff's H-1B petition included evidence that the position of Architectural Designer is a specialty occupation, that the Plaintiff has more than sufficient funds to pay Youngsoo Yang the prevailing wage of $47,407.00 as certified by the DOL on the LCA and that it was in fact paying Mr. Yang that salary at the time it filed the petition, and that Youngsoo Yang is qualified for the Architectural Designer position. The petition included a letter from the Plaintiff that described in detail the specific job duties being performed by Youngsoo Yang as an Architectural Designer. Those duties, set forth in detail in paragraph 9 above, are consistent with the job duties identified under O'NET Code 17-1011 as set forth on the Plaintiff's certified LCA.

27.     The Plaintiff's H-1B petition was accepted in the visa lottery for adjudication. Therefore, Youngsoo Yang continued to work for the Plaintiff beyond the June 30, 2018 expiration date on his OPT EAD card. The longer Mr. Yang worked for the Plaintiff, the more dependent the Plaintiff became on his work and Mr. Yang became a very essential part of the Plaintiff's teams working on various projects for its clients. In fact, the Plaintiff's H-1B visa petition was Youngsoo Yang's only hope to remain in the United States beyond  OPT and available grace period with permission to work in this country.

28.     By notice dated May 24, 2018, the Defendant, USCIS issued a request for evidence ("RFE") in which it alleged that, "the evidence in the record in insufficient to establish that *the occupation listed in the independent authoritative source* is comparable to the proffered position," and that, as such, the Plaintiff did not demonstrate that its certified LCA corresponds with the proffered position. The Defendant, USCIS, directed the Plaintiff to provide additional documentation on this issue, including, inter alia, a copy of the underlying prevailing wage survey that was used the determine the required wage rate for the LCA, in order to establish that the occupation listed on the independent authoritative source is comparable to the proffered position.

29.     The Plaintiff filed a timely response to the RFE. In its response, the Plaintiff submitted a copy of relevant portions from the 2018 Dietrich Surveys: Dietrich Architectural Survey, the List of Documentation Supporting the Prevailing Wage for the Architectural Designer in Boston, MA from the Alien Prevailing Wage Determination (APWD), accompanied by the APWD's administrator's summary report, as used by the Plaintiff to determine the prevailing wage rate for the LCA, attached hereto as Exhibit B. In its response  the Plaintiff also submitted an expert letter, attached as Exhibit C,  from an Architect with 40 years' experience practicing in this

profession, who is familiar with the Dietrich Survey and with the Plaintiff's requirements and duties for this and comparable Architectural Designer positions. This expert letter includes a detailed discussion of the respective positions and unequivocally confirms that, in the author's professional opinion, the Dietrich's Junior Architectural Designer-A category that was used by the Plaintiff to determine the prevailing wage rate corresponded to the professional position offered to Mr. Young, The expert testimony and the wage survey report confirm that the positions of Architect and Architectural Designer overlap in many ways. Moreover, the wage survey summary report specifically states that, "both Architects and Architectural Designers require a Bachelor's Degree in Architecture; the professional society makes no distinction in their duties." This further demonstrates that, aided by the Dietrich Wage Survey administrator, the Plaintiff had correctly identified the job category that was used to determine the prevailing wage for the LCA as matching the position sponsored on its H-1B visa petition. Neither the Plaintiff's attestations in this regard nor the credibility or credentials of its experts were disputed or challenged by the Defendant, USCIS. The expert opinions are dispositive of the issue of whether the Plaintiff's visa petition should be approved.

30.     On September 4, 2018, with a brief reference to the documentation provided by the Plaintiff in its RFE response, the Defendant, USCIS, denied the Plaintiff's H-1B visa petition based on an erroneous determination that the Plaintiff failed to establish that its petition was supported by an LCA which corresponds with the sponsored position of Architectural Designer. As a result of this decision, the Plaintiff was deprived of Mr. Young's services. A copy of the decision is attached hereto as Exhibit D.

31.     The decision to deny Plaintiff's petition is predicated on the Defendant's, USCIS misinterpretation and misapplication of the law and evidences a clear disregard for it

adjudicative responsibilities, which, at the most basic level, include the requirement to properly

review and consider the record, and a disregard for the jurisdictional limitations that govern the

H-1B process. Specifically, in this case, the Defendant, USCIS improperly exercised its

adjudicative function by broadening the scope of its review of the Plaintiff's visa petition beyond

the permissible and relevant criteria to matters that are outside of its jurisdiction, including

second-guessing the process used to determine the prevailing wage rate for the LCA. USCIS

reviews the LCA for compliance with INA and the implementing regulations. However, nothing

in 20 C.F.R. § 655.705(b) or in 8 CFR §214.2(h)(4)(i)(B) authorizes USCIS to engage in wage

determinations  or to audit the employer's documentation regarding its wage selection process,

both of which are matters within the exclusive jurisdiction of the DOL, much less to deny the

Plaintiff's H-1B petition on this basis. In its decision denying the Plaintiff's H-1B petition, the

Defendant, cites the DOL's regulations at 20 C.F.R. § 655.705(b) which states that:

> *... DHS accepts the employer's petition (DHS Form I-129) with the DOL-certified*
> *LCA attached. In doing so, the DHS determines whether the petition is supported by*
> *an LCA which corresponds with the petition, whether the occupation named in the*
> *labor condition application is a specialty occupation or whether the individual is a*
> *fashion model of distinguished merit and ability, and whether the qualifications of*
> *the nonimmigrant meet the statutory requirements for H-1B visa classification.*

The Defendant's, USCIS decision  implies that this provision found in the Department of Labor

regulation, somehow vests it with the authority to not only review the contents of the Plaintiff's

certified LCA as part of its H-1B adjudicative responsibilities, but also to audit the underlying

wage source that was accepted and certified by the DOL and to second guess the methodology

used to determine the required wage rates, both of which are governed by the DOL regulations

and within its sole jurisdiction. The scope of the Defendant's, USCIS review in this case, clearly

exceeds the adjudicative powers and authority vested this agency and is contrary to the USCIS

practice in the adjudication of H-1B petitions.  As such, the Defendant's, USCIS actions were unlawful and in violation of the APA § 706.

32.      The applicable USCIS regulation in 8 CFR §214.2(h)(4)(ii), specifically names "architecture" as a clear example of an occupational category that always satisfies the criteria of a specialty occupation. It states that  "[s]pecialty occupation means an occupation which requires theoretical and practical application of a body of highly specialized knowledge in fields of human endeavor including, but not limited to, **architecture**, engineering, mathematics, physical sciences, social sciences, medicine and health, education, business specialties, accounting, law, theology, and the arts, and which requires the attainment of a bachelor's degree or higher in a specific specialty, or its equivalent, as a minimum for entry into the occupation in the United States."   Consequently, in accordance with 8 CFR §214.2(h)(4)(ii), once USCIS made the determination that the sponsored position corresponds to the occupational category of Architects, as the Defendant did in this instance, it necessarily follows that such position is eligible for the H-1B classification as a "specialty occupation"  because *all* architects,  employed at any level (entry or senior), whether licensed or unlicensed, must have, at a minimum, a Bachelor's degree in Architecture. Thus, any further inquiry into this matter, including a comparison of the duties and requirements for the sponsored position to the duties and requirements of the position used to determine the prevailing wage for the certified LCA, from either the OES/O'NET databank or a private survey, was neither required nor warranted.

33.      The Defendant, USCIS denial of the Plaintiff's visa petition is arbitrary and capricious. Under 5 U.S.C. §§ 702 and 704, the Plaintiff has suffered a "legal wrong" and has been "adversely affected or aggrieved" by agency action for which there is no adequate remedy at law.

34.     Since the denial of the Plaintiff's H-1B visa petition, Mr. Yang is no longer permitted to work in the United States and has now departed this country in order to preserve his immigration status for the future and to ensure there would be no legal impediment to his return to the United States if the Plaintiff prevails in this lawsuit. Similarly, due to the erroneous denial of the H-1B petition, the Plaintiff is now deprived of Mr. Yang's services and has been forced to seek temporary replacements and to reallocate assignments within the project teams where Mr. Yang's work was critical. As a result of the Defendants' actions, the Plaintiff has suffered considerable financial loss and disruptions to its projects.

## COUNT ONE

**Violation of the Administrative Procedure Act 5 U.S.C. § 701, et seq.**

35.     The Plaintiff repeats and re-alleges the allegations in paragraphs 1-34 above and incorporates them herein by reference.

36.     The Defendants improper denial of the Plaintiff's H-1B petition is an agency action and is reviewable under the Administrative Procedure Act.

37.     A reviewing court shall "hold unlawful and set aside agency action . . . found to be—arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The Defendant, USCIS erroneously denied the Plaintiff's H-1B visa petition solely on the ground that the evidence in the record was insufficient to establish that the LCA certified by the DOL does not correspond with the position offered by the Plaintiff to Youngsoo Yang as an Architectural Designer.

38.     The Defendant, USCIS failed to properly consider all evidence, ignored its jurisdictional limitations and an expert's opinion, misread the Plaintiff's response to the RFE and erroneously

concluded that the Plaintiff's petition was not supported by the evidence. In so doing, the

Defendant violated its duty to properly adjudicate the Plaintiff's H-1B visa petition.

39.     The damage to the Plaintiff is irreparable. This lawsuit presents the only viable solution

to the Plaintiff's problem.  The Plaintiff seeks preliminary injunctive relief to prevent further

action by the Defendants on this case until such time as the court can rule on the merits of the

Plaintiff's claim.

40.     As a direct result of the Defendant's, USCIS decision the Plaintiff has lost the benefit of

Youngsoo Yang's services. To the extent relief as requested in this Complaint is not granted the

harm to the Plaintiff is irreparable. The Plaintiff is entitled to a declaratory judgment approving

its petition for Youngsoo Yang and changing his status from F-1 to the H-1B visa category from

October 1, 2018 through September 12, 2021. The Plaintiff requires this approval immediately so

that Youngsoo Yang can return to the United States to work.

41.     The Defendants, in violation of the Administrative Procedures Act, 5 U.S.C. § 701 et

seq., have unlawfully and unreasonably denied the Plaintiff's petition. The Defendants have

failed to properly carry out the adjudicative functions delegated to them by law with regard to the

Plaintiff's case. The Plaintiff is entitled to evidence of Youngsoo Yang's valid H-1B status and

now seeks a Court order requiring the Defendants to provide such evidence. The Plaintiff also

requests a declaratory judgment confirming that its petition was improperly denied and further

seeks preliminary injunctive relief to prevent the Defendants from taking any adverse action on

this case inconsistent with the approval of the Plaintiff's petition for the period requested.

## COUNT TWO

**Violation of the Administrative Procedure Act 5 U.S.C. § 706(2)(C)**

42.     The Plaintiff repeats and re-alleges the allegations in paragraphs 1-41 above and

incorporates them herein by reference.

43.     In its decision denying the Plaintiff's H-1B petition, the Defendant USCIS, cites the

DOL's regulations at 20 C.F.R. § 655.705(b) which it alleges, vests it with the authority to

review and question the contents of the Plaintiff's certified LCA.  However, nothing in 20 C.F.R.

§ 655.705(b) or in 8 CFR §214.2(h)(4)(i)(B) authorizes the USCIS to audit the  employer's wage

selection process, including the selection of the occupational category or wage rate provided on

the certified LCA for compliance with the DOL regulations and the program attestations, much

less to deny the Plaintiff's H-1B petition on this basis.

44.     By determining that the Plaintiff's certified LCA did not match the job offered by the

Plaintiff in its H-1B visa petition, the USCIS acted in excess of its statutory jurisdiction,

authority, limitation and statutory right. In so doing the USCIS violated 5 U.S.C. § 706(2)(C)

## PRAYERS FOR RELIEF

WHEREFORE the Plaintiff respectfully prays that this honorable Court enter an order:

(a)     accepting jurisdiction over this matter;

(b)     temporarily restraining and enjoining the Defendants from taking any action against the
Plaintiff inconsistent with approval of the Plaintiff's petition to approve Youngsoo Yang's
H-1B status effective October 1, 2018 through September 12, 2021 and to permanently
restrain and enjoin the Defendants from revoking or otherwise denying Youngsoo Yang his
nonimmigrant status as requested;

(c)     declaring that the Defendants denial of Leer Weinzapfel's H-1B visa petition for
Youngsoo Yang was arbitrary, capricious, and unlawful and ordering the Defendants to
correct the determination by issuing an approval of Youngsoo Yang's H-1B status effective
October 1, 2018 through September 12, 2021;

(d)     requiring Defendants to provide the Plaintiff with evidence of Youngsoo Yang's H-1B nonimmigrant status by producing the required approval notice;

(e)     award the Plaintiff all costs and reasonable attorney's fees associated with this matter; and

(f)     granting such other relief at law and in equity as justice may require.


**Respectfully submitted,**

**Leers Weinzapfel Associates Architects, Inc.**
**By its attorneys,**


**/s/ Anthony Drago, Esq._____**
**Anthony Drago, Esq. (BBO #552437)**
**Anthony Drago, Jr., P.C.**
**35 India Street**
**Boston, MA 02110**
**(617) 357-0400**
**Anthony@adragopc.com**


**/s/ Beata I. Weiss, Esq._____**
**Beata I. Weiss, Esq. (BBO #637923)**
**Weiss Immigration Law Group**
**75 Kneeland Street, Suite 301**
**Boston, MA 02111**
**857-277-0997**
**bweiss@weissimmigration.com**